In the Matter of Joe Harold WALKER and Ricky Beckman Walker, Debtors.

Bob MULLIS d/b/a Public Saf–T–Oil Company, Plaintiff,

v.

Joe Harold WALKER, Defendant.

Bankruptcy No. 80–00597.

Adv. Proceeding No. 80–0117.

United States Bankruptcy Court, M. D. Georgia, Macon Division.

Oct. 26, 1980.

J. B. Marshall, Attorney at Law, Macon, Ga., for plaintiff.

W. E. Mull, Attorney at Law, Macon, Ga., for Joe Harold Walker.

MEMORANDUM DECISION ON COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT

STATEMENT OF THE CASE

HENRY D. EVANS, Bankruptcy Judge.

Joe Harold Walker and Ricky Beckman Walker, debtors herein, filed a joint petition

in bankruptcy on June 4, 1980. On July 11, 1980, Bob Mullis d/b/a Public Saf–T–Oil Company, plaintiff, filed his complaint seeking a determination of the dischargeability of a debt owed by the defendant to the plaintiff. The debt was evidenced by a promissory note, but the complaint sounded in fraud or defalcation by a fiduciary pursuant to Section 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4). Within the time prescribed by law, the defendant answered, and the matter came on for hearing on September 9, 1980, both parties present and represented by counsel.

After the presentation of evidence and due consideration of the pleadings, transcript and documentary evidence, the Court makes the following

## FINDINGS OF FACT

On April 30, 1980 Joe Harold Walker, defendant, was under the employ of Bob Mullis, the plaintiff, as manager of a particular service station owned by the plaintiff. The defendant had been so employed for three years. As manager of the station, the defendant was responsible for managing the inventory and accounting therefor and collecting and depositing whatever funds were received in the operation of the station.

Due to the defendant's illness on April 30, 1980, Bob Mullis, Jr., the General Manager for plaintiff, went to the station managed by the defendant, took from the station safe the prepared deposit instruments and proceeds of sales for the station and the master report of the station. After depositing the monies and crediting amounts from credit transactions, the master report was found to show a discrepancy of $2,146.85 in the negative.

Following up the discrepancy, the General Manager went back to the station the following day, took an inventory and made a complete accounting which indicated an additional shortage of $1,925.47. This information was transmitted to the defendant, and even though he doubted the possibility of shortages to that extent, he did agree that he was responsible for any shortages that might have occurred, and at the plaintiff's request, he signed a 30–day demand note for the amount of the alleged shortages.

In open Court, the defendant admitted that he would have reasonably expected a certain amount of shortage, due to the practice of station employees charging gas for their personal use and subsequently paying amounts due from their paychecks. With the exception of $100.00 which was used by one of the defendant's employees in the purchase of a truck, the defendant denied any knowledge of the whereabouts of the money or how it was used. He remained incredulous vis–a–vis the size of the reported discrepancy.

## CONCLUSIONS OF LAW

■ A service station manager, even though he has the responsibility of collecting the proceeds of sales from the station accounting therefor and depositing cash amounts thereof, is not a fiduciary.

The fiduciary relationship required by Section 523(a)(4) of the Bankruptcy Code is not one implied by contract or by the factual situation of the parties and the law, but is one of technical or express trusts. No trust agreement was shown the Court nor were any trust duties shown. There was no responsibility on the defendant to disburse the funds collected, preserve the estate through investment or do any other of the duties commonly associated with fiduciaries. The relationship was one which might indeed lead to a trust implied by law, but that is less than is required by the statute. See *Collier on Bankruptcy*, Volume 3, ¶ 523.14(c) (15th ed.). To hold otherwise would make the general managers of all retail outlets fiduciaries and that is not contemplated by the statute. See *In re Bryant*, Case No. 77–515–Mac.

■ Although not specifically plead, Section 523(a)(4) also includes embezzlement and larceny and as written those terms are not modified by fiduciary capacity. Therefore, pursuant to the evidence, there could be an argument made that the defendant should be denied the benefits of his discharge with relation to this particular debt

due to an alleged embezzlement. That argument fails because no appropriation of the funds for the benefit of the defendant was shown. In Georgia, embezzlement is a fraudulent conversion. Ga.Code Ann. § 26–1808; *Baker v. State*, 137 Ga.App. 33, 222 S.E.2d 865 (1976).

Under the statute, and case law associated therewith, it is essential to show a conversion of another's property to the defendant's own use in order to fit within the definition of Theft by Conversion (Georgia's equivalent of embezzlement). The plaintiff has not shown such a conversion.

In addition to the above, before an embezzlement would subject the defendant to the sanctions of Section 523(a)(4), there would have to be a showing of fraudulent intent or deceit. *Moore v. United States*, 160 U.S. 268, 40 L.Ed. 422, 16 S.Ct. 294 (1895). Such fraudulent intent or deceit was not shown.

It is the conclusion of this Court, for the reasons stated above, that the debt of the defendant to the plaintiff is dischargeable in bankruptcy, and that consequently the complaint should be dismissed.