**In re Glenn M. FISH, Debtor.**

**Russell A. MARTOCCI, Plaintiff,**

v.

**Glenn M. FISH, Defendant.**

**Bankruptcy No. 89–7031–8P7.
Adv. No. 89–724.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 23, 1990.

H. James Lentz, Lentz & Todd, P.A., Palm Harbor, Fla., for plaintiff.

Thomas C. Little, Clearwater, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case and the matter under consideration is the dischargeability vel non of a debt admittedly due and owing by Glenn M. Fish (Debtor) to Russell A. Martocci (Plaintiff). The claim of nondischargeability is based on § 523(a)(2)(A), and the proposition urged by the Plaintiff is that the Debtor obtained money from the Plaintiff by misrepresentation upon which the Plaintiff relied and, as a result, suffered damages evidenced by a judgment entered in the state court prior to the commencement of this case in the amount of $3,060.00, plus $475.00 attorney fees, plus $90.50 costs and interest. The facts relevant to the resolution of this controversy as established at the final evidentiary hearing are as follows:

At the time relevant to this controversy, the Debtor was a partner in the architectural firm known as FW Architects (FW). The Plaintiff engaged the services in a corporation known as Rocksbury Building Co. (Rocksbury) for the purpose of designing and constructing a custom-built residential home for the Plaintiff. It appears that the initial architect's drawings were not correct and, for this reason, Rocksbury entered into an agreement with FW to make the necessary adjustments and corrections to the drawings. This was accomplished by the Debtor. The Plaintiff did enter into a contract with Rocksbury to construct the home pursuant to the revised architectural drawings. At approximately the same time, the Debtor left FW and became an employee of Rocksbury, and was placed in charge as a construction manager in charge of the supervision of the construction of the Plaintiff's home.

Although the Debtor was employed by Rocksbury, he was paid directly by the Plaintiff for his services. By mid-summer of 1988, the home was nearing completion when the Debtor, who was apparently in a difficult financial condition, indicated to the Plaintiff that unless he continued to receive weekly payments from the Plaintiff, he would have to leave the job and seek employment elsewhere. In order to assure that the job would be completed and the Debtor would remain on the job, the Plaintiff agreed to lend him $3,000.00. The Plaintiff told the Debtor to go to his attorney's office to sign a promissory note and to pick up the money. The promissory note (Plaintiff's Exh. No. 1) is rather unusual in that it contains the following extensive recital in the body of the note:

The Maker hereof understands and agrees the part of the consideration for the Lender to loan the money represented by this Note is the Maker's promise to act in his capacity, as a Registered Architect in the State of Florida duly licensed to perform architectural services, to supervise construction of Russell A. Martocci's new home on Lot 17, Waterbury,

A PRIVATE LAND RESERVE. Such services shall include, but not be limited to, being a representative of Martocci and shall ensure that the construction is in accordance with the plans and specifications and Martocci's directions, that construction meets or exceeds all applicable codes, ordinances, laws and regulations and that construction progress proceeds in a timely manner without undue delay achieving substantial completion and final completion without defects and deficiencies in the work.

There is no question that the Debtor signed the note before a notary public and did not only peruse, but read the entire document. It is also without dispute that he did receive the funds lent to him by the Plaintiff and never repaid the loan. While it is not clear from the record, it appears the home was finished. The Plaintiff attempted to collect the loan without success; made demand on the Debtor for the repayment of the loan; then instituted an action in the state court; and later on obtained the final judgment against the Defendant by default on June 1, 1989 (Plaintiff's Exh. No. 2).

The Debtor filed his voluntary Chapter 7 Petition on October 3, 1989, and properly listed the Plaintiff as an unsecured creditor holding an undisputed claim in the amount of $3,000.00. A Notice of Meeting of Creditors fixed the bar date to file complaints pursuant to § 523(c) of the Bankruptcy Code as January 2, 1990. The present Complaint was timely filed on December 22, 1989.

Based on the foregoing facts, it is the contention of the Plaintiff that the debt represented by the Final Judgment should be excepted from the general protective provisions of the bankruptcy discharge by virtue of § 523(a)(2)(A).

It should be noted at the outset that it has been generally recognized that the discharge provisions of the Bankruptcy Code are remedial and should be liberally construed in favor of the Debtor in order to achieve the congressional policy which is to give the debtor a new opportunity in life and a clear field for future effort unhampered by the pressures and discouragements of pre-existing debts. *Local Loan v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

The quantum of proof required to sustain a claim of nondischargeability is far from clear. The Code itself is silent as to the burden of proof necessary to establish an exception to the discharge under § 523(a). Both appellate and bankruptcy courts are split as to whether or not the standard is clear and convincing evidence or merely a preponderance of the evidence. There are six circuits which held that the burden of proof for fraud under § 523(a) of the Bankruptcy Code is clear and convincing evidence. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262 (11th Cir. 1988); *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988); *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir.1985). Only the Fourth Circuit has adopted the preponderance of the evidence standard. *Combs v. Richardson, supra.* The latest pronouncement is the decision of the Eighth Circuit in the case of *In re Garner*, 881 F.2d 579 (8th Cir.1989) where the Court of Appeals, having considered extensively the case law covering this subject, concluded that they still adhere to the majority rule and require a clear and convincing standard before a claim of nondischargeability can be sustained under § 523(a)(2), *citing, Matter of Van Horne, supra.* It should be noted that the Supreme Court currently has under consideration this issue in the case of *Grogan v. Garner*, Dkt. No. 89–1149, page 31, 102, petition for *cert.* pending. Pending a resolution of this issue by the Supreme Court, this Court is satisfied that the well-reasoned opinion joining or accepting the majority approach is more persuasive and based on the foregoing, this Court is satisfied that the claim of nondischargeability under § 523(a)(2)(A) or (B) cannot be sus-

tained unless the proof presented is clear and convincing.

Consistent with this overall policy, the majority of the courts concluded that the burden of proof required to establish a viable nondischargeability claim under § 523(a) must be clear and convincing evidence. *Chrysler Credit Corp. v. Rebhan, supra; Matter of Van Horne, supra; In re Phillips*, 804 F.2d 930, 932 (6th Cir. 1986); *In re Black, supra; In re Hunter, supra; In re Kimzey, supra.* Applying these standards to this record, there is hardly any doubt that the Plaintiff has failed to meet the burden of proof required to establish a viable nondischargeability claim for the following reasons:

■ It is true that there is ample evidence in this record which would warrant the inference that the Debtor did, in fact, hold himself out to be a licensed architect. He never was an architect, let alone a licensed architect. This conclusion is not only supported by the fact that he was held out to be a partner in the partnership which carried the name of FW Architects but the promissory note recited earlier, which the Debtor signed, clearly indicates that it was understood by the Plaintiff that the Debtor was a registered architect. This Court is satisfied that the Debtor was well aware of this recitation in the promissory note and, by his silence, acquiesced in the falsity. Notwithstanding the foregoing, this Court is equally satisfied, however, that this misrepresentation was not material in that it played no meaningful role in the decision-making process of the Plaintiff's granting the loan to the Debtor. On the contrary, it is evident that the reason the Plaintiff lent the money to the Debtor was to assure that he would not walk off the job and that the job would be completed. It is also evident that the motivating factor of the Plaintiff in lending the money was his expectation that it would be repaid not because the Debtor was an architect. It should be pointed out in this connection there is no allegation or proof in this record of any improper construction or improper job performance by the Debtor attributable to his incompetence due to the fact that he was not, in fact, an architect.

In the last analysis, this is nothing more than a simple loan transaction and whether or not the Debtor was or was not an architect was of no consequence. This being the case, this Court is satisfied that the Plaintiff utterly failed to furnish clear and convincing evidence that the misrepresentation was material and, most importantly, that the Plaintiff relied upon this misrepresentation. Based on the foregoing, this Court is satisfied that the Plaintiff is not entitled to the relief sought and the Complaint shall be dismissed with prejudice.

A separate Final Judgment will be entered in accordance with the foregoing.